UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re: William D. Wilson

    Debtor                                       CASE NO. 05-50421

                                                          CHAPTER    7

Patricia Wiggins a/k/a Patricia Wilson
  a/k/a Patricia Smith

    Plaintiff

vs.

William D. Wilson

    Defendant                              Adv. Proc. No. 05-05032

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiff against Defendant under 11 U.S.C. §§ 523(a)(5), 523(a)(15) and 727(a)(2)(A). For the reasons set forth below, the Court determines that Defendant is entitled to a discharge and that the indebtedness of the Defendant to Plaintiff is dischargeable. By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

Plaintiff and Defendant divorced on April 7, 2003. Their Separation Agreement and Property Settlement (the "Settlement Agreement") provided, among other things, that Defendant was

1

to receive the couple's 2001 Harley-Davidson motorcycle (the "Motorcycle") and be responsible for payment of the indebtedness secured by the Motorcycle.

Defendant made sporadic payments on the Motorcycle debt, but ultimately could not keep up with the payments. Plaintiff had to bring Defendant before the Graves Circuit Court "on several occasions" because Defendant had fallen behind on payments on the Motorcycle. At one of those hearings, Defendant allegedly taunted Plaintiff by saying that he would "ride it all summer, and then he would let it go back...."[1] Defendant testified, credibly, that he explored the possibility of selling the Motorcycle but found that he could not sell it for enough money to repay the debt. He also testified that he offered to let Plaintiff have to Motorcycle to sell, although Plaintiff denies that Defendant made such an offer. Defendant also testified, credibly, that he cooperated with the repossession agent who came to his house to pick up the Motorcycle. When informed by the repossession agent that the agent had come to repossess the Motorcycle, Defendant stated: "I raised the garage door for him and he backed it out and loaded it up."

The Motorcycle was repossessed in August of 2004, leaving a deficiency balance that now amounts to approximately $8,000.00, for which Plaintiff is also liable. Defendant filed his bankruptcy petition on March 16, 2005. Plaintiff then filed this Adversary Proceeding claiming that the deficiency balance on the Motorcycle should be declared a non-dischargeable debt of Defendant to her under 11 U.S.C. §523(a)(5) or, alternatively, 11 U.S.C. §523(a)(15). Plaintiff also alleges that Defendant concealed the Motorcycle with the intention of hindering his creditor and, therefore, should be denied his discharge under 11 U.S.C. §727(a)(2)(A).

A trial on the merits was held on February 22, 2006.

Defendant has been unable to work since July of 2004, because of injuries allegedly sustained at work. Although Defendant's Workers Compensation claim was denied, Defendant has a Social Security disability claim pending. It is uncertain whether Defendant will prevail in his Social Security claim. As Defendant is essentially a manual laborer, it is uncertain when or if he will be able to return to work. Defendant's sole source of income is $152.00 monthly in Food Stamps. He lives with his 70-year-old mother, whose only income consists of monthly Social Security payments.

---

[1] Defendant denies making such a statement.

On the other hand, Plaintiff has remarried since her divorce from Defendant. She is employed as a nurse with an annual salary of approximately $40,000.00. Her husband has income of approximately $60,000.00 per year but uses part of that to support a son.

## CONCLUSIONS OF LAW
### 11 U.S.C. §523(a)(5)

This Circuit applies a four-part test to determine whether an obligation is "actually in the nature of alimony, maintenance, or support," and thus nondischargeable under 11 U.S.C. §523(a)(5). Under this test, the Court must consider: (1) whether the state court or parties intended to create a support obligation; (2) whether the obligation has the actual effect of providing necessary support; (3) whether the obligation so excessive as to be unreasonable under traditional concepts of support; and (4) if the amount is unreasonable, how to modify the obligation to the extent necessary to serve the purposes of federal bankruptcy law. *Calhoun v. Calhoun, 715 F.2d 1103 (6th Cir. 1983); Fitzgerald v. Fitzgerald, 9 F.3d 517, (6th Cir. 1993).*

The Court finds that the state court and the parties did not intend that Defendant's payment of the debt on the Motorcycle be in the nature of alimony, maintenance or support.

The only indication that the parties might have intended the debt assumption to be a support obligation is the statement in Paragraph 5.7 of the Settlement Agreement, that states: "All debts to be paid by the Husband herein shall be considered as part of maintenance and shall not be dischargeable in bankruptcy." The Court notes initially that the Settlement Agreement is divided into discrete Sections that deal with separate matters. Paragraph 5.7 is part of Section V, which is entitled "Personal Effects and Debts." Section V, however, deals only with things like credit card and medical debts and does not make any mention of the Motorcycle. The Motorcycle is instead dealt with in Section VII, which is entitled "Division of Marital Property." Section VII does not contain a provision comparable to Paragraph 5.7. Thus, the very structure of the Settlement Agreement demonstrates that the parties and the state court did not intend for treatment of the Motorcycle to deemed alimony, maintenance, or support. Furthermore, there was no testimony proffered to suggest that the parties intended Paragraph 5.7 to apply to the Motorcycle.

Because there is no credible evidence that the state court and parties intended

Defendant's assumption of the Motorcycle debt to be a support obligation, the Court need not apply the other three elements of the *Calhoun* test. The debt in question is not a debt that would be non-dischargeable under 11 U.S.C. §523(a)(5).

### 11.U.S.C. §523(a)(15)

As a general rule, the creditor seeking an exception from discharge of a particular debt under 11 U.S.C. § 523(a)(15) bears the burden of proof. *In re Smither*, 194 B.R. 102, 106 (1996), *citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1998). The standard of proof is the ordinary preponderance of the evidence standard. *Grogan* at 291. Under Section 523(a)(15), however, the burden of proof shifts from the creditor to the debtor after the creditor has proven that: (1) the debt is not a debt that would be non-dischargeable under 11 U.S.C. § 523(a)(5); and (2) the debt was incurred in the course of a divorce or separation agreement. *Smither* at 107.

The Court has previously determined that the obligation in question does not constitute a non-dischargeable debt under 11 U.S.C. § 523(a)(5). Based on the facts, it is clear that Defendant is responsible for this debt. Therefore, Plaintiff has met her burden of proof and the burden shifts to Defendant to show either "an inability to pay the debt under § 523(a)(15)(A) or that a discharge would result in a benefit to the Debtor that outweighs the detrimental consequences of a discharge to the spouse, former spouse or children of the debtor under § 523(a)(15)(B)." *Smither* at 107.

The Court will first examine the Debtor's ability to pay the debt using the four part analysis set out by the court in *Smither*. According to *Smither,* the Court must consider: (1) the amount of debt sought to be held nondischargeable; (2) the debtor's current income and the value and nature of any property retained after the bankruptcy filing; (3) the amount of reasonable and necessary expenses the debtor must incur for his support and the support of his dependents; and (4) a comparison of the debtor's property and current income with his reasonable and necessary expenses. *Smither* at 108.

Plaintiff seeks payment from Defendant of approximately $8,000.00. Defendant currently receives only $152.00 in Food Stamps and his future employment prospects are uncertain given his physical condition. According to his bankruptcy petition and schedules he has less than $1000.00 in assets, primarily consisting of a pickup truck valued at $300.00 and miscellaneous hand tools valued at $200.00. Defendant's monthly expenses, although modest, obviously exceed his income.

He is dependent on his elderly mother for support and his mother's income is fixed by Social Security.

Based on the foregoing, it is clear that Defendant lacks the ability to pay the debt in question. Accordingly, Defendant is entitled to a discharge for that debt under 11 U.S.C. §523(a)(15)(A), and the Court need not consider whether Defendant would be entitled to a discharge under 11 U.S.C. §523(a)(15)(B).[2]

11 U.S.C. §727(a)(2)(A)

11 U.S.C. §727(a)(2)(A) states as follows:

> (a) The court shall grant a debtor a discharge, unless—
> ....
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>
>>> (A) property of the debtor, within one year before the date of the filing of the petition....

Thus, under this section of the Bankruptcy Code, a debtor must be denied a discharge if it is proven that, within one year prior to the filing of his or her bankruptcy petition, the debtor transferred, removed, destroyed, mutilated or concealed property, or permitted the same, with the intent to hinder, delay or defraud a creditor. In the instant case, to prevail under 11 U.S.C. §727(a)(2)(A), Plaintiff must demonstrate that Defendant not only engaged in some sort of transfer or concealment of the Motorcycle within the year prior to March 16, 2005, the date of Defendant's bankruptcy petition, but that such transfer or concealment was intended to hinder, delay or defraud Plaintiff or another creditor.

Plaintiff has failed to show that Defendant engaged in an improper concealment or transfer of the Motorcycle. The facts are straightforward and innocuous from the perspective of 11 U.S.C. §727(a)(2)(A). Defendant made sporadic payments on the Motorcycle debt but could not keep up

---

[2]The Court would note in passing, however, that Plaintiff's personal salary of approximately $40,000.00, not to mention her husband's salary of approximately $60,000.00, far surpasses Defendant's paltry $152.00 monthly Food Stamps. It seems patently obvious that the benefit of granting Defendant a discharge clearly outweighs the detriment to Plaintiff from having to pay the debt in question.

with the debt. He explored selling the Motorcycle but found it was worth less than the amount of the loan. Faced with no practical alternative, he simply kept the Motorcycle until a repossession agent came to his house to pick it up, with whom he cooperated.

The crux of Plaintiff's claim under 11 U.S.C. §727(a)(2)(A) is that Defendant concealed from Plaintiff the fact that the Motorcycle was in danger of repossession and failed *voluntarily* to turn over the Motorcycle to Plaintiff, which deprived Plaintiff of the opportunity of either taking over ownership and payments or selling the Motorcycle to avoid the deficiency. In this regard, Plaintiff fails to raise a cognizable claim under 11 U.S.C. §727(a)(2)(A) because Plaintiff fails to allege that Defendant did anything *improper* with his *property*. First, Defendant had no duty to turn the Motorcycle over to Plaintiff. He was given possession of the Motorcycle in the Settlement Agreement and the Graves Circuit Court declined to order Defendant to give the Motorcycle to Plaintiff despite Plaintiff's request even after Defendant fell behind on payment for the Motorcycle. Second, Plaintiff failed to present any credible evidence that Defendant concealed the impending repossession of the Motorcycle from Plaintiff.[3] Indeed, Plaintiff must have known that the Motorcycle was at risk of being repossessed. Plaintiff and Defendant appeared before Graves Circuit Court "on several occasions"because Defendant had fallen behind on payments on the Motorcycle and Plaintiff testified that Defendant taunted her about letting the Motorcycle be repossessed. Under such facts and circumstances, the Court cannot find that there was an improper transfer, removal, concealment, destruction, mutilation or concealment of property under 11 U.S.C. §727(a)(2)(A) and

---

[3]Plaintiff relies solely on the fact that Defendant received a registered letter from the lender, that was addressed to *Plaintiff*, some time shortly before the Motorcycle was repossessed. The Court is apparently expected to assume that the letter was a formal notice of default on the loan and conclude that Defendant intentionally concealed such "notice of default" from Plaintiff. Defendant, however, testified credibly that he did not open the letter and thus did not know its contents and that he attempted to forward the letter to Plaintiff at what he thought was Plaintiff's approximate address. Also, although ultimately not necessary for the Court's decision here, the Court questions whether Defendant's alleged concealment of the *fact* that the Motorcycle was at risk of repossession would even constitute concealment of Defendant's *property* for purposes of 11 U.S.C. §727(a)(2)(A).

must conclude that Defendant is entitled to his discharge.

A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.